UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 21 CR 316 |
| | ) | |
| vs. | ) | Judge Andrea R. Wood |
| | ) | |
| MATTHEW SCHWARTZ | ) | |

**DEFENDANT'S OBJECTIONS
TO PRESENTENCE INVESTIGATION REPORT &
POSITION PAPER AS TO SENTENCING FACTORS**

Defendant MATTHEW SCHWARTZ, by his attorney, Sheppard Law Firm,

P.C., pursuant to Rule 32(f) of the Federal Rules of Criminal Procedure, 18 U.S.C. §

3553(a) and Local Criminal Rule 32.1(g), respectfully offers the following objections

to the proposed guideline calculations in the presentence investigation report

("PSR") and position regarding application of the § 3553(a) factors:

**OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT**

**I.      Objection to 4-point Enhancement Under § 2A6.2(b)(1)**

A. *The parties agree that the 4-point enhancement is not applicable*

The PSR assigns a 4-point enhancement under § 2A6.2(b)(1) on the basis that

defendant engaged in a "pattern of activity involving stalking, threatening,

harassing, or assaulting the same victim." PSR ¶34 (citing §2A6.2(b)(1). The

government acknowledges that only 2-point enhancement should apply under

section 2A6.2(b)(1). *See* Gov. Mem. (Dkt 90) at 5.[1] The defense objects to even the 2-point enhancement on grounds of impermissible double-counting.

      B. *Application of the "pattern of activity" enhancement constitutes impermissible double-counting*

Double-counting occurs where a court relies on conduct to enhance a guideline range and that same conduct was necessary to satisfy an element of the offense of conviction. *United States v. Tenuto,* 593 F.3d 695, 697 (7th Cir.2010). In this case, the stipulated offense is a violation of 18 U.S.C.§ 2261A(2)(B). The title of the statute is "Stalking." *See* § 2261A. An element of the offense is a "course of conduct" that "causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to a person." § 2261A(2)(B). The PSR describes the conduct underlying the stipulated offense as follows: "from in or about March, 2020, to in or around May, 2021, Schwartz caused emotional distress to [Individual A] by stalking, harassing, threatening, and intimidating Individual A." PSR ¶10. The PSR then cites the same conduct – "a pattern of activity involving stalking, threatening, harassing, or assaulting the same victim" – in support of the enhancement. PSR ¶34. Impermissible double-counting has thus occurred.

      **C. Defendant's Proposed Advisory Guideline Range**

Without an enhancement under § 2A6.2(b)(1)(E), the total offense level would be 24, resulting in an advisory guideline range of 51-63 months.

---

[1] The defense provided to the government records from the Circuit Court of Cook County which established that defendant did not violate a protective order in this case. The parties now agree that no enhancement for violation of a protective order should apply. The documentation from the Circuit Court of Cook County is available for the Court's review should the same be requested.

II.     Position Paper as to § 3553(a) Sentencing Factors

The §3553(a) factors merit a significant variance from the advisory guideline range in this case.

**A. This Case is Outside the "Heartland" of Child Pornography Cases.**

As the Probation Department noted: "The circumstances in this case do not appear to fit the typical case of an individual with a child pornography addiction or someone who commits this type of predatory behavior." Prob. Sent. Rec. at 2. Indeed, this case did not start out as a child pornography investigation.[2]

The investigation into Minor A started in March of 2019 when agents located Minor A in Illinois; she had been a reported as a missing person from Minnesota.[3] Minor A reported to agents that she had sex with Mr. Schwartz. Minor A would later inform federal agents that she lied to Mr. Schwartz about her age when she met him; she told Mr. Schwartz that she was 20.[4] Mr. Schwartz and Minor A also met on an adult dating "app." – Seeking.com – which required users to be at least 18 years-old.[5] During this investigation, Mr. Schwartz also emailed Special Agent Groff that he believed that "[Minor A's] profile [on the site] said she was 25 and she looked 25, and acted like she's 30."

Minor A's appearance at the time that she had sexual contact with Mr. Schwartz also resembled that of a woman in her 20's. Individual A met Minor A in

---

[2] The government acknowledges that its pleading in its sentencing memorandum that the investigation was into child pornography was made in error.
[3] This information derives from the complaint for search warrant, dated May 23, 2021.
[4] The application for the sear warrant, ¶13, confirms the same.
[5] The dating site, Seeking.Com, may be found at https://www.seeking.com/safety/our-commitment-to-safety.

2019 when Individual A was about 20 or 21 years-old. Individual A described Minor A to agents as "looking older than herself."[6] Individual A recalled Minor A wearing "a lot of makeup," and having her "hair done." *Id.* Attached, under seal, is a photograph of Minor A when she was allegedly 16; this photograph was posted as part of a missing persons post. Ex. 1. The defense also has no objection to the Court viewing images from the video which is the subject of this case to observe Minor A's appearance at the time the video was created.

In 2019, Mr. Schwartz learned Minor A's true birthday, and he ceased sexual contact with her until she was 18. It is noteworthy that Mr. Schwartz was never charged with having sex with a minor.

The possession of child pornography offense is not premised on the notion that Mr. Schwartz knew Minor A's age at the time that the video was created. Rather, Mr. Schwartz is guilty of this offense because by May 24, 2021 – when agents recovered the video from his home – Mr. Schwartz had learned that Minor A was under 18 when the video was created. In other words, he failed to dispossess himself of the video after learning that Minor A was under 18 when the video was created.

The PSR is incorrect when it pleads "defendant admitted when the video was created, he knew Minor A was under the age of eighteen." PSR ¶7. The defendant did not discuss the offense at the PSI on the advice of counsel, who was present during the interview. PSR ¶4. Special Agent Groff also informed the Probation

---

[6] This information derives from a 302-report and is available upon request.

Department that she was "unsure of when exactly the defendant became aware the victim was under 18." PSR ¶8. Mr. Schwartz did not know Minor A's age when the video was created.

The unusual facts of this case take it outside the "heartland" of child pornography cases. The introduction to the Federal Sentencing Guidelines explains the "heartland" concept:

> The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, *one to which a particular guideline linguistically applies but where conduct significantly differs from the norm,* the court may consider whether a departure is warranted.

U.S.S.G. Ch. 1, Pt. A, Intro. Comment 4(b)(2021)(emphasis added). "[A] district court's decision to vary from the advisory Guidelines may attract greatest respect when the sentencing judge finds a particular case 'outside the 'heartland' to which the Commission intends individual Guidelines to apply." *Kimbrough v. United States*, 552 U.S. 85, 89, 128 S. Ct. 558, 563 (2007).

The "typical" child pornography case involves a defendant who intentionally searches for child pornography.[7] The collections typically involve an extremely large number of images, pre-pubescent minors,[8] and images depicting violent or sadomasochistic abuse. *See United States v. R.V.,* 157 F.Supp.3d 207, 259 (E.D.N.Y.

---

[7] In today's era, child pornography defendant most often intentionally seek out child pornography, often through the use of search terms such as "PTHC" (preteen hardcore), a term which appears in 94 different cases on Westlaw.

[8] See U.S. Sentencing Commission's Report to Congress (2012) at vi. (Executive SummarY) available at https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Executive_Summary.pdf

2016)(describing the "typical offender's collection;") *see also United States v. Chiccini*, No. 21-1036, 2022 WL 1024261, at *3 (3d Cir. Apr. 6, 2022)(describing "the typical case of possessing or receiving child pornography . . ."); *see also United States v. Knott*, No. 2:21CR328-MHT, 2022 WL 16571169, at *3 (M.D. Ala. Nov. 1, 2022)(describing the "majority of files" and citing, *Federal Sentencing of Child Pornography Non-Production Offenses*, U.S. Sent'g Comm'n, (June 2021) at 19, and *Child Pornography*, U.S. Dep't Justice, https://www.justice.gov/criminal-ceos/child-pornography)).

In this case, Mr. Schwartz did not set out to collect child pornography. A defendant's lack of "initial intent" is one factor that can take a case outside of the "heartland." *See e.g., States v. Nachamie*, 121 F.Supp. 2d 285, 297 (S.D.N.Y. 2000), *aff'd*, 5 F. App'x 95 (2d Cir. 2001). Additionally, the adult-like appearance of the woman in the video, the fact that the images did not depict violent or sadomasochistic abuse, and the fact that Mr. Schwartz did not possess a large volume of illicit images of different minors also makes this case atypical. Accordingly, this case is outside of the "heartland" of child pornography cases.

### B. The Two-Level Computer Enhancement Is Inherent in the Offense and is Not a Genuine Aggravating Factor. Additionally, a Decreased Level of Deference is Accorded to the Child Pornography Guidelines.

Congress directed the implementation of the child pornography guidelines through statutory directives; the Sentencing Commission did not develop them based on empirical studies. *See United State v. Dorvee*, 616 F.3d 174, 185 (2d Cir. 2010)(explaining the Sentencing Commission's position). In fact, the Sentencing

Commission "often openly opposed th[e] Congressionally directed changes." *Id.* The

enhancements – *e.g.,* the computer enhancement and the-number-of-images-

enhancement – are outdated in the digital age. These enhancements are present "in

nearly all cases," and, "are all but inherent to the crime of conviction." *See Dorvee*,

616 F.3d at 186.[9] As far back as 1996, the Commission acknowledged criticism of

the computer enhancement because "it fails to distinguish serious commercial

distributors of online pornography from more run-of-the-mill users." *Dorvee*, 616

F.3d at 186 (citing, United States Sentencing Commission, *Report to Congress: Sex*

*Offenses Against Children Findings and Recommendations Regarding Federal*

*Penalties,* June 1996, at 25–30).

Based on the above deficiencies in the Guidelines, numerous courts, including

in this District, "have questioned the child pornography Guidelines on policy

grounds; these courts have frequently declined to apply these enhancements

because they fail to reflect the institutional expertise of the United States

Sentencing Commission, are in many cases duplicative and fail to distinguish

between aggravated and mine-run cases." *United States v. Burns*, No. 07 CR 556,

2009 WL 3617448, at *7 (N.D. Ill. Oct. 27, 2009)(citing a collection of cases); *see also*

*United States v. Grober*, 595 F. Supp. 2d 382, 392 (D.N.J. 2008), *aff'd*, 624 F.3d 592

(3d Cir. 2010); *Hanson*, 561 F. Supp. 2d at 1006; *United States v. Johnson*, 588 F.

---

[9] "Of all sentences under § 2G2.2 in 200997.2% involved a computer (qualifying
for a two-level increase pursuant to § 2G2.2(b)(6))… and 63.1% involved 600 or more images (qualifying
for a five-level enhancement pursuant
to § 2G2.2(b)(7)(D))[footnoted omitted]." *Dorvee*, 616 F.3d at 186 (citing, Sentencing Commission, *Use
of Guidelines and Specific Offense Characteristics for Fiscal Year 2009,* available at
http://www.ussc.gov/gl_ freq/09_glinexgline.pdf (last visited April 19, 2010).

Supp.2d 997, 1003 (S.D. Iowa 2008); *United States v. Shipley,* 560 F.Supp.2d 739,

744 (S.D. Iowa 2008); *see also e.g., United States v. Gellatly*, No. 8:08CR50, 2009 WL

35166, at *4 (D. Neb. Jan. 5, 2009)("the Guideline ranges of imprisonment for those

crimes are a less reliable appraisal of a fair sentence."); *United States v. Henderson,*

649 F.3d 955, 959-60 (9th Cir. 2011)("[T]he child pornography Guidelines were not

developed in a manner 'exemplify[ing] the [Sentencing] Commission's exercise of its

characteristic institutional role,' . . . so district judges must enjoy the same liberty to

depart from them based on reasonable policy disagreement as they do from the

crack-cocaine Guidelines discussed in *Kimbrough.*"); *Grober,* 624 F.3d 592, 600-01

(3d Cir. 2010)(applying abuse of discretion review to a district court's policy-based

downward variance from § 2G2.2 because "the Commission did not do

what 'an exercise of its characteristic institutional role' required—develop §2G2.2

based on research and study rather than reacting to changes adopted or directed by

Congress"); *Dorvee,* 616 F.3d at 184 (stating that the § 2G2.2 Guidelines are

"fundamentally different from most and that, unless applied with great care, can

lead to unreasonable sentences," and describing § 2G2.2 as "irrational"); *United*

*States v. Phinney,* 599 F. Supp. 2d 1037, 1039 (E.D. Wis. 2009)("When

Guidelines are not the result of 'the Commission's exercise of its characteristic

institutional role,' such as when they are not based on an empirical approach, but

are instead keyed to or guided by statutory directives, a court is not presented with

the 'ordinary case,' in which 'the Commission's recommendation of a sentencing

8

range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.' ").

According to a survey conducted by the U.S. Sentencing Commission in 2010, 70 percent of the federal judges surveyed responded that the guideline ranges for possession of child pornography were too high. U.S. Sentencing Commission, Results of Survey of United States District Judges, January 2010 Through March 2010, Question 1 (June 2010).[10]

The Sentencing Commission has also reported to Congress that the cumulative enhancements addressing the content and volume of images possessed, "in addition to base offense levels of 18 or 22, result[] in guideline ranges that are overly severe for some offenders in view of the nature of their collecting behavior." See U.S. Sent'g Comm'n, *Report to the Congress: Federal Child Pornography Offenses* (2012)[*Child Porn. Report*] at 323. The Commission further reported that recent studies show that "appropriate 'treatment interventions . . . are associated with lower rates of recidivism—some of them very significant." *Id*. at 278 & n.31 (quoting Center of Sex Offender Management, The Comprehensive Approach to Sex Offender Management 5 (2008)).

Based on the foregoing, policy reasons exist for a sentence well-below the advisory Guideline range for the child pornography offense.

---

[10] Available at available at
https://www.ussc.gov/Research/Research_Projects/Surveys/20100608_Judge_Survey.pdf.

## C. Nature & Circumstances of the Stalking Offense

Mr. Schwartz met Individual A on "eros.com," an "escort directory." *See*

Eros.com. He spent over $300,000 in payments and gifts on her. They later became

engaged. She later ended the engagement. Mr. Schwartz was in the throes of a

cocaine addiction (PSR ¶76) during this time. He had also already been battling a

long history of mental health issues. PSR ¶69. Mr. Schwartz's drug addiction does

not excuse his behavior, though cocaine abuse affects the "prefrontal lobe" which

is the area of the brain which regulates "impulse control." *See*

https://www.ncbi.nlm.nih.gov/pmc/articles/PMC181074/.[11]

Moreover, Mr. Schwartz sought drug treatment during the period of the

offense. Even *pre-Booker*, the Guidelines and courts recognized self-imposed

rehabilitative efforts as a basis for a departure. *See* U.S.S.G. 3E1.1, app. note

1(g)(listing "post-offense rehabilitative efforts (e.g., counseling or drug treatment)"

as an indicium of acceptance of responsibility); *see also e.g., United States v.

Rodriguez,* 724 F.Supp. 1118, 1119 (S.D.N.Y.1989)(departing downward based on

defendant's exceptional rehabilitative progress over an extended period of time

preceding imposition of sentence); *see also e.g., United States v. Blake*, 89 F.Supp. 2d

328, 346 (E.D.N.Y. 2000)(departing, in a bank robbery case, from a level 29 to level

---

[11] As stated by the National Library of Medicine: "Cocaine abusers may have problems with thinking logically. The most frequently reported cognitive difficulties involve impaired executive functioning (decision making, judgment, attention/planning/mental flexibility), and research has shown that this cognitive domain relates primarily to the functional integrity of the prefrontal lobe. This area of the brain also regulates impulse control. The resultant effects would be poor judgment in an individual experiencing impulsivity in the face of severe cocaine craving."

8 and imposing a sentence of probation, in part because incarcerating defendant would "reverse the progress she has made;" the court further considered the decreasing opportunities for rehabilitation in federal prisons resulting from ever-increasing prison populations).

In September 2020 – during the period of the offense – Mr. Schwartz voluntarily entered a residential treatment facility in California. PSR ¶76. Upon his return to Illinois, he enrolled in the Gateway Foundation outpatient program. *Id.*

During this case, while at the MCC, he spoke to a psychologist weekly. While at the Winnebago County Jail, he completed several programs which assisted in his mental health and sobriety. Attached, please find a multitude of certificates for programs which Mr. Schwartz completed while in custody. Ex. 2. Mr. Schwartz also has been participating in Alcoholic Anonymous. A representative of the local Chabad organization – a religious group – has also been visiting Mr. Schwartz weekly at the Winnebago County Jail. That representative has submitted a letter on Mr. Schwartz's behalf documenting Mr. Schwartz's acceptance of responsibility for his actions. Ex. 3.

Mr. Schwartz has a plan in place, upon his release, to address his mental health and substance abuse issues. Attached, is a letter from Dr. Stephanie Kutzen, dated December 1, 2022, who is prepared to provide clinical counseling to Mr. Schwartz. Ex. 4. In addition, Mr. Schwartz will be served by the HINDA institute. HINDA is an acronym for **H**elping **Ind**ividuals **A**scend. It is a 501(c)(3) organization dedicated to providing services to Jewish prisoners. Rabbi Scheiman, who leads

HINDA, writes, "[u]pon Matthew's release, we will make a psychiatrist and psychologist available to evaluate Matthew and recommend a complete treatment plan." Ex. 5. HINDA will provide: individual caseworkers and counseling, provide home visits by a Hinda chaplain, provide Mr. Schwartz with access to its peer support groups (family support group, addiction support group, reentering support group), and allow him to participate in its "monthly reentry courses." *Id.* The PSR also notes that Mr. Schwartz plans to continue in substance abuse treatment and join a 12-step program. PSR ¶78.

### D. A Particularly Stressful and Lengthy Period of Pretrial Detainment

Mr. Schwartz voluntarily surrendered for his arrest on May 26, 2021 and has since been detained. The Court may recall that, at the hearing on the motion to reopen detention hearing, defense counsel reported to the Court that other inmates at the MCC were threatening Mr. Schwartz's life and extorting him. The Court, and the government, were responsive to these concerns and Mr. Schwartz was ultimately transferred to the Winnebago County Jail. He was also extorted in the Winnebago County Jail, albeit to a lesser extent.

The conditions of pretrial confinement were also particularly difficult for Mr. Schwartz based on his Chron's Disease which often went untreated while in custody. He also suffered two bouts of Covid-19 while in custody. The pandemic also led to many restrictions on detainees such as more lockdowns.

"A court may depart if the defendant has suffered from unusual stress due to a lengthy or particularly stressful incarceration." *United States v. Speed Joyeros,*

*S.A.*, 204 F. Supp. 2d 412, 441 (E.D.N.Y. 2002)(two level departure granted where

defendant's livelihood was destroyed, and she was subjected to lengthy and rigorous

pretrial detention). Detention in a county jail also constitutes "harder time than

that spent in a federal prison, which offers more in the way of programming and

recreation." *United States v. Walker*, No. 07-CR-285, 2008 WL 2705598, at *3 (E.D.

Wis. July 10, 2008). In this case, Mr. Schwartz's pretrial incarceration was

particularly lengthy (over a year and a half) and stressful.

### E. Character Letters

The Seventh Circuit has repeatedly affirmed downward variances where the

district court relied heavily on the letters submitted on the defendant's behalf. *See*

*e.g., United States v. Wachowiak*, 496 F.3d 744, 754 (7th Cir. 2007); *United States v.*

*Warner*, 792 F.3d 847, 857 (7th Cir. 2015). In *Warner*, 792 F.3d at 857, the district

court relied mainly on the defendant's letters of support in sentencing him to two

years' probation with community service and a $100,000 fine, where the guidelines

were 46-57 months. The character letters in this case likewise support a variance.

Ex. 6. The letters – and the PSR – document Mr. Schwartz's strong family ties, a

need to be involved with his children, and a support system in place.

### F. Mr. Schwartz is in the Category of Defendants Least Likely to Reoffend

The Sentencing Commission has conducted studies which show that a person

in Mr. Schwartz's shoes poses a low risk of recidivism. *See Measuring Recidivism:*

*the Criminal History Computation of the Federal Sentencing Guidelines,* A

Component of the Fifteen Year Report on the U.S. Sentencing Commission's

Legislative Mandate (May 2004), U.S. Sentencing Commission, Release 1 and 2:

- Offenders with zero criminal history points have "substantially lower recidivism rates" than other offenders, including offenders who have only one criminal history point, *See Recidivism and the 'First Offender',"* United States Sentencing Commission Research Series on Recidivism, Release 2.

- "Recidivism rates decline relatively consistently as age increases." *Id.* at 12. Mr. Schwartz is 53 years-old.

- [T]hose with stable employment in the year prior to their instant offense are less "likely to recidivate." *Id.* Parenthetically, since his arrest, Mr. Schwartz's business, Nelix Inc., a web development company, is now defunct. PSR ¶81.

- "[O]verall, offenders are most likely to recidivate (25.6%) when their sentence is a straight prison sentence" as opposed to probation or split sentences. *Id.*

A defendant, such as Mr. Schwartz, who had never been incarcerated, also

generally requires a shorter term of imprisonment to achieve the same goal of

protecting the public from further crimes of the defendant.

*See United States v. Baker,* 445 F.3d 987, 992 (7th Cir. 2006); *United States v.*

*Qualls*, 373 F.Supp.2d 873, 877 (E.D. Wisc. 2005) (Adelman, J.); *see also,*

U.S.Dept. Of Justice, *An Analysis of Non-Violent Drug Offenders with*

*Minimal Criminal Histories*, Executive Summary (February 4, 1994)(shorter

prison sentence will deter as well as long sentences); Miles D. Harar, *Do*

*Guideline Sentences for Low-Risk Drug Traffickers Achieve Their Stated*

*Purpose?*, 7 Fed.Sent.Rep. 22 (1994)(a guidelines sentence has no deterrent

value and can increase recidivism).

14

### G. The Need for the Sentence Imposed

Defendant was initially indicted for stalking in this case on June 22, 2021. Doc. 27. It was not until over a year later, on August 23, 2022, that he was charged with possession of child pornography. This was so even though agents recovered the video in question on May 24, 2021. PSR ¶6. The thrust of this case thus seemed to be stalking. Had this case been a stalking case, alone, the advisory guideline range, even applying the 2-point enhancement for a "pattern of activity" of stalking, would be 24-30 months.[12]

In this case, for a defendant with no criminal history, who has pled guilty, and where the victim did not sustain physical harm, a sentence at the low end of that range would be appropriate. Additionally, the fact the defendant must register as a sex offender for a lifetime – based on the single video in question – adds to the overall harshness of any sentence of that is imposed in this case. *See, e.g., United States v. Garate*, 543 F.3d 1026, 1028 (8th Cir. 2008)(considering "the collateral consequences of being convicted as a sex offender" in imposing a below-Guideline sentence of 30 months when the defendant faced a Guideline sentence of 57-71 months for two counts of traveling with the intent to engage in sexual conduct with a minor).

---

[12] Stalking has a base offense level of 18; plus 2 points for the enhancement under §2A6.2(b)(1), would place the offense level at 20; minus three points for acceptance of responsibility would place the adjusted offense level at 17, which equates to 24-30 months' imprisonment.

Restitution

Mr. Schwartz has voluntarily agreed to a significant amount of restitution: **$30,261**. Such restitution includes the following: $9,050 to Minor A, $8,300 of which is for future psychotherapy costs and $750 of which is the approximate cost of medical care stemming from defendant's conduct. Additionally, $21,211 will go to Individual A to account for the following: $8,300 in future psychotherapy costs; $11,700 for the approximate increase in rent that Individual A has paid for her new apartment relative to her old apartment after her former landlord refused to renew her lease based on damage that Mr. Schwartz caused to the property; $500 for the security deposit Individual A forfeited to her landlord as a result of the damage; $360 for the approximate cost of operating an alarm system and security camera following defendant's break-in to Individual A's former residence; $200 for the approximate cost of Individual A's renting a U-haul to move to a new apartment; and $151 for changing the title and registration of her vehicle after it was titled in Mr. Schwartz's name.

Mr. Schwartz has agreed to these restitution payments even though, as the PSR notes, "he has a negative net worth and negative cash flow. He does not have substantial assets for a lump-sum payment or restitution of fine." PSR ¶86. In other words, when Mr. Schwartz is released from custody and tries to get back on his feet, a portion of his income will be going to restitution payments.

A sentence which will enable the defendant to promptly return to work to make restitution is appropriate. *See e.g., United States v. Menyweather*, 431

16

F.3d 692, 702 (9th Cir. 2005), *opinion amended and superseded on denial of reh'g,*

447 F.3d 625 (9th Cir. 2006)(holding, in a $500,000 embezzlement case, that the

district court did not abuse its discretion in departing downward by 8 levels to

probation in part because "a sentence of probation may have made defendant better

able to provide restitution to the victims, *see* 18 U.S.C. § 3553(a)(7)"); *see also*

*United State v. Stern,* 590 F.Supp.2d 945 (N.D. Ohio 2008)(sentence of a year and a

day, below guideline range of 46-57 months, for possession of child pornography

because, among other factors, the need for restitution would be satisfied by

substantial community service).

## CONCLUSION

Based on a totality of the foregoing circumstances, a sentence of 24 months,

with sex offender, drug, and mental health counseling as a condition of supervised

release, would be "sufficient, but not greater than necessary" to accomplish the

purposes of sentencing. 18 U.S.C. § 3553(a).

Respectfully submitted:


/s/ Adam Sheppard
An Attorney for Defendant


/s/ Barry Sheppard
An Attorney for Defendant

Sheppard Law Firm, P.C.
180 N. LaSalle Street, Suite 2510
Chicago, Illinois 60601
(312) 443-1233
Adam Sheppard IL Bar no. 6287375
Barry Sheppard IL Bar no. 2579901

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing Objections to PSR & Sentencing

Memorandum was filed on December 5, 2022, in accordance with Fed.R.Crim.P.49,

Fed.R.Civ.P.5, LR 5.5, and the General Order on Electronic Case Filing (ECF)

pursuant to the district court's system as to ECF filers.


<u>/s/ Adam Sheppard</u>
Attorney for Defendant

Adam Sheppard
180 North LaSalle Street, Suite 2510
Chicago, Illinois 60601
(312) 443-1233
adam@sheppardlaw.com
IL Bar. No. 6287375