UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 21 CR 316 |
| vs. ) | |
| ) | Hon. Andrea R. Wood |
| MATTHEW SCHWARTZ ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION FOR COMPASSIONATE RELEASE
PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)**

The UNITED STATES OF AMERICA, by Acting United States Attorney MORRIS PASQUAL, hereby submits its memorandum in opposition to defendant MATTHEW SCHWARTZ's motion for release from the Bureau of Prisons ("BOP") pursuant to 18 U.S.C. § 3582(c)(1)(A). R. 104. As discussed below, defendant has failed to establish that he has exhausted his administrative remedies, or that extraordinary and compelling reasons warrant consideration of a sentence reduction and, therefore, his motion should be denied.

## BACKGROUND

I. **OFFENSE CONDUCT**

   A. **Conduct and Possession of Images of Child Pornography Involving Minor A**

Defendant preyed on Minor A, a female runaway and a ward of the state from Minnesota. PSR ¶ 8. Defendant began a sexual relationship with Minor A after meeting her online when she was 16 years old. *Id*. Defendant paid Minor A for her companionship with cash and gifts, including a vehicle, as well as for her to travel

from out of state to his homes in Illinois for the purpose of engaging in sexual acts with him. PSR ¶ 7.

Pursuant to a warrant to search defendant's residence, law enforcement seized a number of electronic devices and electronic storage media. On one of these devices, a San Disk USB thumb drive, law enforcement identified a video of defendant penetrating Minor A's vagina with defendant's penis. PSR ¶ 6. Defendant admitted he knew that the video depicted Minor A at a time when she was under the age of eighteen. PSR ¶ 7.

B.     **Defendant's Threats Against and Stalking of Individual A**

Defendant met his former girlfriend, Individual A, online. PSR ¶ 20. Defendant and Individual A began a romantic relationship, which eventually led to an engagement. *Id*.

Over the course more than a year—from about March 2020 through and including May 2021—defendant waged a campaign to threaten and harass Individual A after she ended their relationship. For example, in March 2020, defendant, or another individual acting at defendant's direction, broke into Individual A's residence and stole her dog. PSR ¶ 11. In April 2020, defendant placed a shovel with the words, "1st place gold digger," "cheater," "liar," "slut," "whore," "skank," and "asshole," written on it at the entrance to Individual A's garage. Defendant also left at her residence a book titled *The Ethical Slut*. *Id*. In June 2020, defendant stole Individual A's car, a black 2015 Mercedes Benz, by changing the title of the car into his name. PSR ¶¶ 14, 18.

2

Throughout this period, defendant also physically stalked Individual A by driving past her residence or parking near her residence. In or around April 2020, defendant installed a tracking device on Individual A's vehicle, without Individual A's knowledge, to enable defendant to know Individual A's whereabouts. PSR ¶ 12. Defendant also obtained the password to Individual A's Apple iCloud account and attempted to access her account to obtain her private information. PSR ¶¶ 12, 18.

Beginning in May 2020, defendant began to use a mobile application called the Burner App to send dozens of threatening text messages to Individual A from disguised phone numbers. PSR ¶ 13. Defendant used the Burner App to message Individual A because Individual A had blocked defendant's phone number from contacting her. See *id*. For example, on May 31, 2020, defendant used the Burner App to send Individual A several text messages, including the following: "I am going to attack the fuck out of you and kill you dead if you do not start talking to me I'm not fucking kidding … you deserve to be choked … you need to come talk to me or things are gonna get really fucking bad I'm going to prison anyway bitch so who the fuck cares … honestly deaths too good for you." *Id*.

Defendant continued to send Individual A messages for several months. On November 3, 2020, defendant used the Burner App to send Individual A several more text messages from another anonymous phone number. The messages included the following statements by defendant: "You know the endgame is designed so that you don't get hurt. And in fact it ends up with you in a good place. I can change that. So that it ends with you getting ended in one of three ways. 1) quick and painless. 2)

3

slow and painful and 3) a kind of living death … just be happy I'm taking the high road and not hurting you. Most people would choose a different path. Don't fuck with me or I will become most people. I will choose #2 …" PSR ¶ 15.

On November 27, 2020, defendant used the Burner App to send Individual A several more text messages from another anonymous phone number. The messages included the following: "I should have just killed you. But I couldn't live with myself. And now the best choice is for me to kill myself … and now you just ignore me. You think that will make me go away. It just strengthens by resolve. If I decide to kill myself—and I'm close to that decision. You could be damn sure I'll be taking you and your flavor of the day with me." PSR ¶ 16.

In December 2020, defendant created flyers depicting Individual A that defendant intended to distribute in Individual A's neighborhood. PSR ¶ 17. The flyers stated that Individual A was a prostitute and a drunk. *Id*. The flyer encouraged Individual A's neighbors to contact her management company and demand she be removed from her residence. *Id*. Defendant also created a Google email address, cconcerned7703@gmail.com, which he used to contact Individual A's management company and request that she be "removed from the community." *Id*. Defendant created the flyers and the Google email account with the intention of getting Individual A evicted from her home. *Id*.

Critically, defendant's conduct towards Individual A was not the result of a fit of anger. His use of disguised numbers and a tracking device, his menacing tone, and

4

the repeated and prolonged nature of his tactics show that his actions were calculated and intended to intimidate and manipulate her.

## II.   PLEA AND SENTENCING

On August 23, 2022, defendant plead guilty to the superseding information in this matter, which charged defendant with one count of possession of child pornography, in violation of Title 18, United States Code, Section 2252A(a)(5)(B). R. 75, 77. In his plea agreement, defendant also stipulated to having committed the additional offense of cyberstalking, in violation of Title 18, United States Code, Section 2261A(2)(B).

On December 12, 2020, this Court sentenced defendant. R. 95. Specifically, this Court sentenced defendant to serve a 57-month sentence, followed by a three-year term of supervised release. R. 98.

## III.   COMPASSIONATE RELEASE MOTION

On August 17, 2023, defendant filed a *pro se* motion for immediate release from the custody of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (the "compassionate release" statute). R. 104.

## ARGUMENT

In his *pro se* motion, defendant seeks release pursuant to § 3582(c)(1)(A), which allows for such relief where, "after considering the factors set forth in section 3553(a) . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Defendant has failed to establish that he is eligible for relief under

5

§ 3582(c)(1) and, even if he had made the necessary showing, no relief would be warranted in light of the sentencing factors set forth in 18 U.S.C. § 3553(a).

## I. Legal Standard

As amended by Section 603(b) of the First Step Act of 2018, Pub. L. 115-391, Title 18, United States Code, Section 3582(c)(1)(A), provides:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i)    extraordinary and compelling reasons warrant such a reduction; or
>
> (ii)   the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Direct of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

*Id.*

Pursuant to Congress's directive, prior to the enactment of the First Step Act, the Sentencing Commission promulgated USSG § 1B1.13, which sets forth the Sentencing Commission's policy statement with respect to § 3582(c)(1)(A). Consistent with § 3852(c)(1)(A)(i), § 1B1.13 provides that a court may reduce a term of

imprisonment, after considering the § 3553(a) factors, if three criteria are satisfied: (1) "extraordinary and compelling reasons warrant the reduction"; (2) "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (3) the reduction is consistent with the factors set forth in 18 U.S.C. § 3553, to the extent relevant. U.S.S.G. § 1B1.13.

As Congress expressly directed, the Sentencing Commission issued policy statements defining the "extraordinary and compelling reasons" that might warrant a sentence reduction under § 3582(c)(1)(A)(i). *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."); *United States v. Peoples*, 41 F.4th 837, 842 (7th Cir. 2022).

Application Note 1 to Guideline § 1B1.13 limited the "extraordinary and compelling reasons" for which a sentence reduction is appropriate to the following particular circumstances:

> 1.    The defendant suffers from a "terminal illness" or his physical or mental condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13 cmt. n.1(A).
>
> 2.    The defendant is at least 65 years old and experiencing a serious deterioration in physical or mental health because of the aging process, and has served the lesser of 10 years or 75% of his sentence. *Id.* § 1B1.13 cmt. n.1(B).

7

    3.    The defendant's family circumstances include either the death or incapacitation of the caregiver of the defendant's minor child or minor children or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner. *Id.* § 1B1.13 cmt. n.1(C).

    4.    "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13 cmt. n.1(D).

Guideline § 1B1.13, cmt. n. 1.

In *United States v. Gunn*, 980 F.3d 1178 (7th Cir. 2020), the Seventh Circuit held that, because Guideline § 1B1.13 has not been amended following the enactment of the First Step Act, "the Guidelines Manual lacks an 'applicable' policy statement covering prisoner-initiated applications for compassionate release." *Id.* at 1181. Therefore, *Gunn* held, district courts are free to consider motions for a sentence reduction on grounds other than the categories of extraordinary and compelling reasons listed in Guideline § 1B1.13, as limited by the statute itself. However, the court pointed out that:

> [t]he substantive aspects of the Sentencing Commission's analysis in §1B1.13 and its Application Notes provide a working definition of "extraordinary and compelling reasons"; a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused.

*Id.* at 1180. Therefore, under *Gunn*, Guideline § 1B1.13 remains instructive, although not exhaustive, in determining the meaning of the term "extraordinary and compelling reasons" for purposes of § 3582(c)(1)(A)(i).[1]

---

[1] The government argued in *Gunn* and in numerous other cases that Guideline § 1B1.13 is binding on the district court in the context of motions for compassionate release filed by the

8

Subsequently, the Seventh Circuit provided further guidance regarding consideration of motions for discretionary sentencing reductions under § 3582(c)(1)(A), suggesting a two-step analysis:

> At step one, the prisoner must identify an "extraordinary and compelling" reason warranting a sentence reduction . . . Upon a finding that the prisoner has supplied such a reason, the second step of the analysis requires the district court, in exercising the discretion conferred by the compassionate release statute, to consider any applicable sentencing factors in § 3553(a) as part of determining what sentencing reduction to award the prisoner.

*United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021).

## II. Defendant Has Not Complied with § 3582(c)(1)'s Exhaustion Requirement.

As noted above, § 3582(c)(1)(A) provides that "the court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . ."

Although defendant asserts otherwise, *see* R. 104 at 10, the record contains no evidence showing that defendant ever submitted to the warden of his institution a request for compassionate release, and the BOP reports finding no record of such a

---

defendant, and that the court lacks authority to grant relief under the statute on bases other than those enumerated in the application notes that accompany § 1B1.13. This argument is now foreclosed by *Gunn*. The government preserves for potential further review the argument that *Gunn* was wrongly decided, and that a sentence reduction may be granted under § 3582(c)(1)(A)(i) only where the defendant has established an extraordinary and compelling reason, as defined by Application Notes 1(A) through 1(C) to Guideline § 1B1.13.

request. Therefore, defendant has failed to establish that he has exhausted his administrative remedies as required by 18 U.S.C. § 3582(c)(1).

Enforcement of the statute's exhaustion requirement is mandatory and may not be waived by courts. *United States v. Sanford*, 986 F.3d 779, 782 (7th Cir. 2021) (holding that § 3582(c)(1)(A)'s exhaustion requirement is a mandatory claim-processing rule and that must be enforced when properly invoked). Because defendant has not complied with § 3582(c)(1)(a)'s exhaustion requirement, this Court lacks authority to grant defendant relief and his motion should be dismissed.

### III. Defendant Has Not Established that Extraordinary and Compelling Reasons Warrant Consideration of a Sentence Reduction.

Even if defendant had established exhaustion, he would still be ineligible for relief because he has not established that there exists an extraordinary and compelling reason warranting consideration of a sentencing reduction in this case.

Defendant argues that he is entitled to compassionate release on the basis of a diagnosis of Crohn's disease that he received when he was 8 years old. R. 104 at 11. Specifically, defendant argues that he is receiving no treatment for his Crohn's disease, that his "pain and discomfort are not being addressed by prison medical staff whatsoever," and that he "also experiences immediate urges to go to the bathroom frequently." *Id*. Also, in one line, defendant asserts that he has an abscess tooth for which he is not receiving treatment. *Id*. Defendants' medical records from the Bureau of Prisons, however, indicate that he is in, fact, receiving treatment for his conditions and that he has in some instances denied further treatment offered to him. For example, notes from a visit to the Chronic Care Clinic at defendant's BOP facility

10

state that, as recently as July 18, 2023, defendant had been taking 6-Mercaptopurine 50 mg for his Crohn's disease, a medication the notes indicate he has used since he was a teenager. *See, e.g.*, Exhibit A[2] at 1. At that same visit, he reported baseline bowel habits with frequent bowel movements, noting that these symptoms were not new. *Id*. He denied any abdominal pain or cramping. *Id*. A February 8, 2023, note from the Chronic Care Clinic likewise indicated that defendant had "done well" on his medication, that he did not have abdominal pain, and that his symptoms are "well controlled". *Id*. at 13-14. In fact, that same note mentions that defendant was due for a colonoscopy, but that defendant had declined the test while in the custody of the Bureau of Prisons, stating that he intended to obtain one upon his release. *Id*.[3]

Regarding defendants' complaint about his teeth, on April 19, 2023, defendant refused extraction of the tooth that contained the abscess after previously having been prescribed antibiotics. *Id*. at 69. He was advised that he would no longer be prescribed antibiotics, and that his only further treatment option was extraction or refusal of services. *Id*. Particularly given his denials of further treatment and prior management of symptoms, defendant has not shown that he suffers from a medical condition that cannot be managed in a prison environment.

---

[2] Exhibit A has been filed under seal because it contains medical records of the defendant.

[3] Defendant attaches to his motion a letter from Dr. David T. Rubin, MD, stating that he needs to be seen by a qualifying specialized physician for his Crohn's disease, and states generally that he "understand[s] he not received adequate care or treatment." R. 104 at 16. This letter does not provide any detail to contradict the medical records provided by the Bureau of Prisons.

11

Defendant also mentions in passing without argument that he is a candidate for immediate release because he has zero criminal history points. R. 104 at 11. The fact that defendant had zero criminal history points is not an extraordinary and compelling reason for release. The Court considered defendant's zero criminal history points during his sentencing when calculating his guidelines range. Defendant received a significant sentence, despite the lack of criminal history, because of the serious nature of his crimes. His lack of criminal history is not now a compelling reason for release. *See United States v. Greer*, 1:14-cr-00237-JMS-KMB-3, 2023 WL 5226605, at *2 (S.D. Ind. Aug. 15, 2023) (concluding the same).

In sum, defendant has failed to demonstrate an extraordinary and compelling reason for consideration of a sentence reduction, and his motion should be denied on this basis as well.

**IV. Defendant Has Not Established that His Early Release Would Be Consistent with the Sentencing Factors Set Forth in 18 U.S.C. § 3553(a).**

Given that defendant has failed to make the necessary showing establishing his eligibility for relief under the statute, this Court need not address the relevant § 3553(a) factors. *See Thacker*, 4 F.4th at 756 (consideration of the § 3553(a) factors is required only "upon a finding that the prisoner has supplied such a [extraordinary and compelling] reason"). Even if defendant had made the necessary showings, however, his early release would be unwarranted as inconsistent with the relevant § 3553(a) factors.

12

As the government argued in its sentencing submission, defendant committed very serious offenses. R. 90 at 4-5. To begin, defendant took advantage of Minor A's vulnerability. He used his wealth to entice Minor A—a ward of the State of Minnesota—to engage in sex acts with him. He secretly recorded her, creating and possessing child pornography. He kept that recording in his personal collection despite his knowledge that Minor A was underage.

Defendant's stalking of and threats towards Individual A were similarly serious and alarming. As the Probation Officer recognized in the PSR, defendant's actions towards Individual A were not one-time lapses in judgment, but rather a deliberate pattern of criminal behavior. *See* PSR ¶ 34. Defendant harassed individual A for more than a year—following her, trying to get her evicted, breaking into her apartment, stealing her dog, and sending threatening messages to her, including death threats, from anonymous telephone numbers. Individual A has sought out mental health treatment to cope with the trauma defendant inflicted on her. Moreover, as the Probation Officer also recognized,[4] defendant could have easily acted upon these threats, presenting an even greater danger to the community. Probation Sentencing Recommendation at 2.

As it did at the time of sentencing, the government acknowledges that defendant has a strong family support system. PSR ¶ 61. He also has received prior

---

[4] Defendant argues that the BOP Case Manager and the Prisoner Assessment Tool Targeting Estimated Risk and Needs is better situated to evaluate defendant's danger to the community than the government, as his case manager has met defendant personally. R. 104 at 13. However, his Probation Officer, who observed in the PSR that defendant engaged in a pattern of behavior and could have easily acted on his threats, has met with defendant and interviewed him personally.

13

treatment for depression, anxiety, and substance abuse. PSR ¶¶ 69-71, 76. While somewhat mitigating, these factors are also potentially aggravating, as neither the ongoing support of his family, nor prior treatments and therapies, prevented defendant from victimizing Minor A or Individual A. *See United States v. Portman*, 599 F.3d 633, 637 (7th Cir. 2010), *as amended* (Mar. 24, 2010) ("[A] defendant must show why personal characteristics act as a mitigating, not potentially aggravating factor[.]")

Defendant also cites to his post-sentencing conduct, describing it as "exemplary." R. 104 at 13. Specifically, defendant says he has "taken advantage of opportunities in prison to better himself" and has "served nearly 2 ½ years in prison without receiving a disciplinary infraction." *Id*. Defendant attaches to his motion many certificates of completion for various courses that he has taken. R. 104 at 38-88. But as the Seventh Circuit has noted, maintaining a good disciplinary record is "not extraordinary," *United States v. Ugbah*, 4 F. 4th 595, 597 (7th Cir. 2021), and "[t]aking classes while incarcerated is common rather than extraordinary," *United States v. Vaughn*, 62 F.4th 1071, 1072 (7th Cir. 2023). Compassionate release is not properly granted on these bases.

Lastly, defendant argues that his sentence will not diminish (1) deterrence where there is an unforeseen circumstance and (2) respect for the law where the reduction is warranted. R. 104 at 13. Defendant has not established either an unforeseen circumstance or that a reduction is warranted, and his motion should not be granted on this basis, as well.

14

For these reasons, even if defendant were eligible for relief under § 3582(c)(1), no such relief would be warranted.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that Matthew Schwartz's motion for compassionate release (R. 104) be DENIED.

> Respectfully submitted,
>
> MORRIS PASQUAL
> Acting United States Attorney
>
> By: s/ Irene Hickey Sullivan
> Irene Hickey Sullivan
> Assistant United States Attorney

September 22, 2023

**CERTIFICATE OF SERVICE**

Irene Hickey Sullivan, an Assistant United States Attorney assigned to the instant matter, hereby certifies that the

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)**

was served on September 22, 2023, in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, Local Rule 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers; and was caused to be served by mail on:

MATTHEW SCHWARTZ, Reg. No. 54469-424
Milan - FCI
4004 E. Arkona Road
Milan, MI 48160

/s/ *Irene Hickey Sullivan*
Irene Hickey Sullivan
Assistant U.S. Attorney
219 South Dearborn St., 5th Floor
Chicago, Illinois 60604
(312) 353-5300